IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA AMBROSE,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>                                              / | No. C 10-0234 WHA<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this social security appeal, this order finds the administrative law judge did not err in his decision to deny benefits to plaintiff. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

**STATEMENT**

**1.   PROCEDURAL HISTORY**

On May 28, 2004, plaintiff Tamara Ambrose applied for supplemental security income (SSI), alleging she was unable to work since March 26, 2004, due to diabetes mellitus, depression, alcohol abuse, cirrhosis, obesity, pilonidal cyst status post surgical correction, headache, labial abscess, recurrent breast abscess, vasculitis, plantar fasciatus, gastroenteritis, lipoma status post excision, and hyperlipidemia (AR 18–20). Her application was denied both initially and upon reconsideration. An administrative hearing was timely requested (AR 18).

On November 2, 2006, a hearing was held before ALJ Steven B. Berlin (AR 18 and 39–74). After plaintiff submitted a post-hearing brief addressing additional issues, the ALJ reopened the record and the hearing resumed on August 30, 2007 (AR 18 and 80–90). The ALJ rendered a decision on September 10, 2007, finding plaintiff was not disabled (AR 19). Plaintiff requested administrative review (AR 14). The Appeals Council denied the request (AR 7). Plaintiff filed the instant appeal on January 19, 2010, seeking judicial review pursuant to 42 U.S.C. 405(g). Both sides have moved for summary judgment.

**2.   TESTIMONY AT THE ADMINISTRATIVE HEARING**

At the first hearing before the ALJ, plaintiff testified she was 38 years old and stopped working in April 2004 because of diabetes and high blood sugar (AR 45–46). When her blood sugar was elevated above the normal range she said she experienced tingling in her hands, dry mouth, a limp when walking, and trouble concentrating (AR 46 and 60). She also testified she took insulin and other medication for her condition. When these symptoms would occur while she was working, she would check her blood sugar and, if it was above 500 mg/dL, leave work to go to the emergency room. Plaintiff claimed that she went to the emergency room four or five times in 2004 because of high blood sugar, but never stayed overnight (AR 47).

Plaintiff acknowledged she was not following, and often forgot, the diabetic diet recommended by her physician, Dr. John Gallo. She testified, though, that she was changing her eating habits and working to improve her diet (AR 48–49). She also testified she took medication to help address a sleeping problem (AR 51–52). She emphasized she had trouble remembering to take her medications, particularly her diabetes medication (AR 59). She also had vasculitis, which made her legs feel weak (AR 62). Because of learning problems, she told the ALJ she took special education classes in high school (AR 57). As a result of all of these problems, plaintiff testified she often felt very tired (AR 63–64).

Plaintiff testified she was married and lived with her husband, mother, and two teenage children. She stated her husband did not work and both her children received SSI and had learning disabilities. Plaintiff testified she cared for her children by preparing their meals,

making sure they took their medications, getting them to school, and taking them to the doctor (AR 44, 52–55). She also testified she regularly washed the laundry and dishes, vacuumed the carpets, shopped for groceries, and took walks with Max, the family dog (AR 56).

At the second hearing, in August 2007, Dr. Alan Frank, a medical expert, testified at the request of the ALJ after plaintiff raised additional legal issues concerning her non-compliance with treatment (AR 89, 275–77). Dr. Frank testified he was not entirely certain why plaintiff was not compliant with treatment and non-compliance intensified her symptoms (AR 83–84).

### 3.  MEDICAL EVIDENCE

The medical evidence was summarized in the ALJ's decision (AR 21–29). This order will also briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined her after she filed her application for benefits in May 2004.

In July 2004, plaintiff went to her primary physician, Dr. Gallo, at the Kaiser facility in Richmond, complaining of high blood sugar, often around 200 mg/dL, a headache, and ringing in her ears. She also stated she recently stopped taking a prescribed medication for her diabetes (AR 284–86). Dr. Gallo noted plaintiff looked well and he was not certain why she came to see him. He also noted she was still non-compliant with her treatment (AR 334–335).

Two months later, in September 2004, state agency physician, Dr. Camille Williams, reviewed plaintiff's medical records and concluded plaintiff did not have any severe impairments because diabetes was not causing any end organ damage or other objective disability indications (AR 392–394). Later that month plaintiff visited Dr. Janine Marino, who performed a consultative mental status examination and found nothing sufficient for a diagnosis of a mental impairment (AR 316–318).

In November 2004, plaintiff went to Kaiser complaining of body aches and high blood sugar (AR 327). She stated her back hurt after moving some heavy furniture. She was diagnosed with a muscle strain. She was also given additional training in diabetes management because Dr. Gallo noted she was "rampantly" non-adherent to her diabetic diet (AR 322–24).

3

The following month, state agency physician Dr. Robert Hood reviewed plaintiff's medical records and concluded plaintiff did not have a medically determinable mental impairment (AR 392–394).

In January 2005, the Social Security Administration Office of Inspector General (OIG) produced a Report of Investigation because plaintiff presented a high risk for fraud (AR 395–404). The report noted that plaintiff's test results indicated potential malingering (AR 398). The report also noted that although plaintiff claimed disability because of a mental impairment, plaintiff was responsible for spending and accounting for the SSI benefits her children received, "her ability to function in this capacity is obviously inconsistent with her alleged disability" (AR 398–99). In addition, when the OIG investigator visited plaintiff's home in December 2004, he noted the home was neat and clean and plaintiff was not in any pain or discomfort. Plaintiff told the investigator she took care of her children and pets, did all the household chores, handled the family finances, and went bowling as a hobby (AR 398–99).

In March 2005, state agency physician Dr. Antoine Dipsia reviewed plaintiff's medical records and noted the OIG report reflected that the initial denial of benefits was appropriate (AR 391). In addition, Dr. Mario Morando, a psychiatrist for the state agency, reviewed the findings of Dr. Janine Marino, from September 2004, and concluded plaintiff did not have a medically determinable impairment (AR 374–387).

A few months later, in May 2005, plaintiff had surgery on a pilonidal cyst. During her pre-surgery examination, however, her physician was concerned more about plaintiff's extremely high blood sugar, around 450 mg/dL, with probable glucose toxicity (AR 552–553). Plaintiff was referred, again, to the diabetic management clinic (AR 546–548).

In June 2005, plaintiff told a diabetic management clinic counselor she felt better and had more energy. The counselor noted in her report that plaintiff's blood sugar was normal, 150 mg/dL, but plaintiff was still eating too much fast food and not "ready" to completely change her diet (AR 536–537). Near the end of this month, plaintiff requested a note from Dr.

4

Gallo to get off from work. Dr. Gallo gave plaintiff a note that provided three days off of work, but that she could return to work in July 2005 with "no restrictions" (AR 528–29).

In December 2005, plaintiff complained of increased depression because of her lack of willpower to comply with her treatment program. Dr. Gallo increased her medication and suggested plaintiff seek mental health treatment (AR 485).

In January, February, and March 2006, plaintiff went to Kaiser complaining of high blood sugar (AR 466, 468, and 471). Also in March 2006, plaintiff met with Dr. Gallo to address foot pain she experienced from playing football in the yard with her children (AR 458).

In July 2006, plaintiff again complained of problems from high blood sugar. Dr. Gallo discussed the importance of following treatment plans with plaintiff and noted plaintiff was noncompliant with chronic care management, lacking self-discipline, and lacking the intelligence and or confidence to adjust her own insulin (AR 434).

The following month, plaintiff came to Kaiser complaining of profound fatigue and extremely high blood sugar, around 500 mg/dL. Dr. Gallo treated plaintiff for hyperglycemia and noted the likely cause of her condition was non-compliance (AR 433).

In September 2006, Dr. Gallo noted plaintiff was once again "rampantly non-adherent" with dietary restrictions (AR 410 and 648). He also noted plaintiff had already been through diabetic management training and seen a nutritionist (AR 410).

Two months later, in November 2006, plaintiff complained of left heel pain after playing football with her family (AR 637-45). She also complained of numbness in both hands, which Dr. Gallo attributed to the improper use of crutches after injuring her heel playing football (AR 636). Plaintiff did report, however, that her blood sugar was under control (AR 647).

In January 2007, plaintiff returned to Kaiser, complaining of body pain and stress over her high blood sugar (AR 603). Dr. Gallo noted in his record that plaintiff had a long history of non-adherence with medication and diabetic diet and management. He also noted plaintiff's medical complaints were vague, which was typical (AR 599).

5

The following month, plaintiff returned to Dr. Gallo complaining of high blood sugar. Dr. Gallo diagnosed plaintiff with diabetes mellitus with retinopathy (AR 589–90).

In March 2007, plaintiff went to see an eye specialist, Dr. David Gilbert, because of the recent diagnosis from Dr. Gallo of retinopathy and worsening vision in her right eye. Dr. Gilbert diagnosed plaintiff with cataracts, but not retinopathy (AR 583–84).

The following month, plaintiff went to a mental health specialist to discuss her depression and stress. Dr. Hamilton diagnosed plaintiff with an adjustment disorder, but he did not review any of her medical records and discharged her without treatment or medication. Plaintiff noted she felt "improved" and "much better" after she had a chance to talk with someone about her problems (AR 650–55).

**ANALYSIS**

**1.  LEGAL STANDARD**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her

6

previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v).

### 2. THE ALJ'S FIVE-STEP ANALYSIS

In his decision, the ALJ found at step one of the sequential evaluation process that plaintiff had not engaged in substantial gainful activity since the date of her benefits application. At step two, the ALJ decided that plaintiff did not have a severe medical impairment (AR 20). The ALJ went on to state that even if plaintiff's diabetes were found to be severe, she would be ineligible for benefits due to chronic non-compliance with prescribed treatment. The ALJ concluded plaintiff was not under a continuous disability at any time between her application for benefits and his decision (AR 29–30). Given these findings, it was unnecessary to reach steps three through five.

Plaintiff now argues the ALJ erred in two respects: (i) his finding that plaintiff's diabetes mellitus was non-severe was not supported by substantial evidence, and (ii) he improperly relied upon plaintiff's alleged non-compliance with her diabetes medication.

### 3. THE ALJ DID NOT ERR IN DENYING BENEFITS

For the following reasons, this order finds that the ALJ did not err in his decision to deny benefits to plaintiff.

#### A. The ALJ Properly Found Plaintiff Had No Severe Impairment

The ALJ did not err in finding that plaintiff did not have a severe combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. To determine whether plaintiff had a severe impairment the ALJ considered all of plaintiff's symptoms and the extent to which these symptoms could reasonably be reconciled with the objective medical evidence and other evidence. 20 C.F.R 416.929. The ALJ also considered opinion evidence. 20 C.F.R 416.927. The ALJ followed a two-step process, whereby he first determined whether an underlying medically determinable impairment existed. Second, the ALJ evaluated the intensity, persistence, and limiting effects of claimant's

7

symptoms to determine the extent to which they limited her ability to do basic work activities.[1] If statements about the intensity, persistence, and limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the ALJ had to use the entire case record to make a finding on the credibility of the statements. 20 C.F.R 416.929.

Indeed, because a claimant's symptoms could suggest a greater level of severity of impairment then could be shown by the objective medical evidence alone, the regulations describe several factors the ALJ may consider when assessing the credibility of the claimant's statements, including: (i) daily activities; (ii) location, duration, frequency, and intensity of pain or symptoms; (iii) factors that precipitate and aggravate symptoms; (iv) type, dosage, effectiveness, and side effects of any medication; (v) treatment for relief of pain or other symptoms; (vi) any measures used to relieve pain or other symptoms other than medical treatment; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 96-7.

Using this process, the ALJ found plaintiff had medically determinable impairments, including diabetes mellitus and depression (AR 20). The ALJ also found, however, plaintiff did not have a combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months (AR 20). Therefore, under 20 C.F.R 416.921, plaintiff did not have a severe impairment and was not entitled to benefits.

The Ninth Circuit has consistently held that if the ALJ's finding was supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In this case, substantial evidence existed to support the ALJ's finding that plaintiff did not have a severe impairment. While plaintiff's medical evidence supported a finding of impairments, including diabetes and depression, these conditions did not

---

[1] Basic work activities are the abilities and aptitudes necessary to do most jobs. Examples include: (i) physical functions such as walking, standing, sitting, and lifting; (ii) capacities for seeing, hearing, and speaking; (iii) understanding, carrying out, and remembering simple instructions; (iv) use of judgment; (v) responding appropriately to supervision and work situations; (vi) dealing with changes in a routine work setting (SSR 85-28).

8

1  meet the test for severity outlined in the regulations, specifically that these conditions were
2  intense enough to significantly limit plaintiff from basic work-related activities for twelve
3  consecutive months.  The ALJ validly pointed out that despite her non-compliance with
4  medication and a diabetic diet, plaintiff only had intermittent diabetic symptoms that required
5  little medical attention (AR 22).  Her physical examinations were often unremarkable and her
6  stress testing results were often normal (AR 342).  She also lacked end-organ damage from her
7  diabetes (AR 24).  Quite simply, the ALJ did not consider plaintiff's impairments met the level
8  of significance to limit her from working for a period of twelve continuous months.

9  Moreover, the ALJ found that the credibility of statements made by plaintiff concerning
10 the severity of her impairments were also difficult to reconcile with her daily activities.  The
11 ALJ must give specific, clear and convincing reasons for rejecting plaintiff's allegations of
12 disabling symptoms.  *Thomas v. Barnhart*, 278 F.3d 947, 959–60 (9th Cir. 2002).  The ALJ is
13 responsible for determinations of credibility, thus, where the evidence is susceptible to more
14 than one rational interpretation, the decision of the ALJ must be upheld.  *Andrews*, 53 F.3d at
15 1039.  The ALJ found that plaintiff's testimony was not fully credible because plaintiff claimed
16 she was unable to work, however, she was able to complete regular household chores, grocery
17 shopping, and care for her children, both of whom were on disability benefits and needed
18 additional supervision.  In addition, she was able to participate in recreational activities
19 including walking her dog, playing football, and bowling.

20 Although potentially susceptible to more than one rational interpretation, any of these
21 activities could demonstrate that plaintiff's impairment was not as severe as she claimed.  The
22 ALJ deemed plaintiff's capacity to participate in these activities as evidence she had no severe
23 impairments.  Additionally, the investigation by the OIG of the potential fraud and malingering
24 by plaintiff further raised questions about the credibility of plaintiff's testimony with respect to
25 her alleged impairments.  Thus, in light of the reasons set forth by the ALJ, his determination
26 about plaintiff's disability must be upheld.

9

Plaintiff argues the ALJ's decision is incorrect because the Ninth Circuit decided that severity is merely a "de minimis" hurdle intended to do no more than screen out groundless claims in determining whether a claimant has a severe impairment at step two. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). In that case, the Ninth Circuit reversed the decision of the ALJ and remanded the case because substantial evidence did not exist to support the ALJ's finding at step two that the claimant did not suffer from severe mental impairment, in light of the examining psychologist's uncontroverted findings that the claimant suffered from severe depression and anxiety. In *Edlund*, the court emphasized the importance, at the step two inquiry, of the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on his ability to function, without regard to whether each alone was sufficiently severe. Given the uncontroverted diagnosis of the examining psychologist, in that case, as to the claimant's symptoms of agitated depression and anxiety, the court noted that the ALJ lacked substantial evidence for dismissing the claim. *Ibid.*

In this case, the ALJ's findings met the de minimis standard set forth in *Edlund*. The ALJ did not ignore an uncontroverted diagnosis because none were made in this case in favor of plaintiff. All the state agency physicians that examined or reviewed the medical records of plaintiff supported the ALJ's decision to deny benefits. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. In fact, plaintiff's own physician, Dr. Gallo, cleared plaintiff to go back to work in July 2005 with no restrictions. Defendant cites a more appropriate decision with regard to the facts in this case, *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999), where the Ninth Circuit found that although the appellant clearly suffered from diabetes, high blood pressure, and arthritis, "there is no evidence to support his claim that those impairments are severe." In that case, much like this one, the claimant's description of his own pain and symptoms belied the observations of medical experts and others about his condition. Here, plaintiff does suffer from

10

1  diabetes and depression, however, the ALJ relied on substantial evidence when deciding that
2  those impairments, and all of plaintiff's impairments, as a whole, were not severe.

3  Plaintiff also contends that medical expert, Dr. Alan Frank, testified plaintiff had
4  functional limitations due to diabetic neuropathy and that the ALJ discounted this testimony.
5  The record does not reflect this contention. The ALJ validly pointed out that although Dr.
6  Frank said he saw a mention of neuropathy, the actual treatment records did not make such a
7  diagnosis (AR 25). The ALJ also points out that Dr. Gallo attributed plaintiff's hand numbness
8  to her improper uses of crutches after playing football, and that this condition did not persist
9  (AR 25 and 636). Plaintiff's contention fails.

### B.     The ALJ Properly Addressed Plaintiff's Non-Compliance

The ALJ validly pointed out that even if plaintiff were disabled by diabetes, she was chronically non-compliant with treatment and therefore, would not be eligible to receive benefits. A claimant seeking SSI must follow prescribed treatment if it can restore the individual's ability to work. 20 C.F.R 416.930(a). If claimant fails to follow such treatment she will be found not disabled unless she can establish a good reason.[2] When evaluating reasons for non-compliance, physical and mental limitations are considered. 20 C.F.R 416.930(b).

The record amply demonstrated plaintiff's non-compliance with her treatment plan. Her own physician, Dr. Gallo, noted numerous times she was non-compliant with treatment. He even declared, with obvious frustration, that she was "rampantly" non-compliant and "she just needed to listen" to his instructions and her problems would be controlled (AR 410 and 466). In addition, plaintiff's own behavior, on most days, indicated that she was capable of following treatment, but she simply chose or did not have the willpower to do so.

Plaintiff argues her non-compliance is not the result of a willful refusal to do so. Plaintiff cites *Villa v. Astrue*, 2009 WL 5088749 (C.D. Cal. Dec. 16, 2009), to support the notion that the ALJ cannot improperly rely upon alleged chronic non-compliance. Plaintiff also

---

[2] The regulations offer examples of what amounts to a good reason, including religious beliefs, surgeries, and risky treatment. 20 C.F.R. 416.930(c).

11

asserts her failure to follow prescribed treatment is born of ignorance and lack of understanding, and the ALJ erred in ignoring these facts when making his decision. This order disagrees. "The ALJ may consider many factors in weighing a claimant's credibility." *Tommasetti*, 533 F.3d at 1039. The ALJ thoroughly reviewed the evidence of plaintiff's alleged mental limitations and reasonably concluded that her ability to care for her two disabled children and act as their representative payee showed she was in adequate control of her faculties (AR 27–29). Furthermore, plaintiff's claim that she was ignorant or lacked understanding does not justify her continued non-compliance with her medication and diet. Lacking self-discipline and will power is not a mental impairment, it is a life-style choice. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). In short, plaintiff's decision to not follow her treatment program, against the repeated medical advice of her own physician, did not make the decision of the ALJ erroneous, nor did it entitle her to SSI.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: September 16, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE